IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES LEE, III | § | PLAINTIFF |
| | § | |
| v. | § | CIVIL ACTION NO. 1:05CV439-LG-RHW |
| | § | |
| EVAN STORR, individually and in his capacity as a duly commissioned police officer for the City of Biloxi, Mississippi, SCOTT DOUCET, individually and in his capacity as a duly commissioned police officer for the City of Biloxi, Mississippi, BRUCE DUNAGAN, individually and in his official capacity as the Police Chief for the City of Biloxi, Mississippi, A. J. HOLLOWAY, individually and in his capacity as Mayor of the City of Biloxi, Mississippi, UNKNOWN OFFICERS, individually and as duly commissioned police officers for the City of Biloxi, Mississippi, and CITY OF BILOXI, MISSISSIPPI | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER COMES BEFORE THE COURT** on the Motion for Summary Judgment [38] filed by Defendants, City of Biloxi, Mayor A. J. Holloway, Officer Evan Storr (individually and in his official capacity), Officer Scott Doucet (individually and in his official capacity), and Bruce Dunagan (individually and in his official capacity). The Court finds that Defendants' Motion for Summary Judgment should be granted in part and denied in part as set forth below.

**FACTS**

On September 21, 2005, Plaintiff, James Lee, III, filed this lawsuit against the City of Biloxi, Mayor A. J. Holloway, and the following officers of the Biloxi Police Department: Evan Storr, Scott Doucet, and Chief Bruce Dunagan. Plaintiff alleges that he went to the Bombay

Bicycle Club ("the Club") in Biloxi, Mississippi, with his brother and two of his cousins on February 7, 2004.  (Ex. C to Pl.'s Resp. at 22-24).  He claims that he saw the Club's security guards choking his cousin after exiting the Club's restroom.  As officers from the Biloxi Police Department began to arrive, Plaintiff approached Officer Storr in order to tell him what was happening inside the Club, but Storr told him to wait and asked one of the security guards if Plaintiff was involved in the altercation.  (*Id.* at 24-25).  Plaintiff claims that the guard told Storr that Plaintiff was not involved in the altercation, and Storr, after checking Plaintiff's identification, went up the steps of the Club in order to speak with the security guard.  (*Id.* at 26-27).  Plaintiff claims that Storr later returned and grabbed him by the hand.  (*Id.* at 31).  The security guard then pushed him from behind, causing both Plaintiff and Storr to fall to the ground.  (*Id.* at 31).  Plaintiff claims that he was attacked by Storr, Officer Doucet, and the security guard, when he tried to get off of Storr.  (*Id.* at 35-36).  He claims that Doucet punched him in the chest, and placed him in a lateral vascular neck restraint.  (*Id.* at 38).  He alleges that one of the officers pushed his face against the concrete with his knee while he was handcuffed.  (*Id.* at 37-38).

However, Storr has given a different version of the events that took place at the Club on February 7, 2004.  Storr alleges that he arrived at the Club, and was approached by Plaintiff, who was agitated.  (Ex. A to Pl.'s Resp. at 13).  He requested Plaintiff's identification, and told Plaintiff he would not arrest him if there were no warrants for his arrest.  (*Id.*)  He asked Plaintiff to wait outside while he assisted another officer inside the Club.  (*Id.*)  When Storr returned, the security guard informed Storr that Plaintiff was under citizen's arrest for assault.  (*Id.*)  The security guard grabbed one of Plaintiff's arms, and Storr grabbed the other arm.  (*Id.* at 13, 15).

Plaintiff began repeating that he would not go to jail and moving his arms in a swinging motion as they attempted to handcuff him. (*Id.* at 13, 18). Plaintiff then broke away and swung at Storr. (*Id.* at 18-19). When Storr ducked to avoid being hit, Plaintiff tackled him to the ground. (*Id.*) Storr grabbed Plaintiff in the groin, because Plaintiff would not let him stand up. (*Id.* at 20-21). Plaintiff was then placed in a lateral vascular neck restraint by Officer Doucet, which allowed Storr to return to his feet.[1] (*Id.* at 22). Storr then struck Plaintiff in the abdomen and face. (*Id.* at 21-22). Doucet and Plaintiff fell to the ground, while Doucet maintained the lateral vascular neck restraint. (*Id.* at 24). Plaintiff told them he could not breathe, and they instructed him to stop resisting. (*Id.*) Storr, Doucet, and the security guard were able to establish sufficient control of Plaintiff to handcuff him. (*Id.* at 24). Storr did not recall anyone placing his knee on Plaintiff's head while he was being handcuffed. (*Id.* at 26).

Plaintiff alleges the following claims against Defendants: cruel and unusual punishment under the Eighth and Fourteenth Amendments; deprivation of liberty without due process of law; violation of Plaintiff's right to be safe and protected from injuries while in Defendants' custody; violation of Plaintiff's right to be protected by the police officers while under their control; violation of Plaintiff's right to be free from excessive and unreasonable force; and violation of Plaintiff's right to necessary medical treatment for his injuries. (Compl. at 18). Defendants have filed a Motion for Summary Judgment.

## DISCUSSION

Pursuant to FED. R. CIV. P. 56, any party to a civil action may move for a summary

---

[1] Officer Doucet testified at his deposition that he placed Plaintiff in the neck restraint because Plaintiff was about to strike Storr from behind. (Ex. 2 to Pl.'s Resp. at 6-7).

judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Celotex Corp.*, 477 U.S. at 324-25.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).  When a defendant asserts qualified immunity, the burden shifts to the plaintiff to rebut the applicability of the defense.  *Breen v. Texas A & M University*, 485 F.3d 325, 331 (5th Cir. 2007).

**PLAINTIFF'S CLAIMS AGAINST OFFICERS DOUCET AND STORR IN THEIR INDIVIDUAL CAPACITIES**

The doctrine of qualified immunity shields government officials from lawsuits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Breen*, 485 F.3d at 332 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).  Qualified immunity analysis is a two-step process.  *Michalik v. Hermann*, 422 F.3d 252, 257 (5th Cir. 2005).  First, the plaintiff must allege the violation of a clearly established constitutional right.  *Michalik*, 422 F.3d at 257.  In order to satisfy this requirement, a plaintiff must demonstrate that a reasonable official would understand that what he or she is doing violates a constitutional right.  *Wooley v. City of Baton Rouge*, 211

F.3d 913, 919 (5th Cir. 2000). If the plaintiff satisfies this burden, the Court must determine whether the official's conduct was objectively reasonable under the law at the time of the incident. *Michalik*, 422 F.3d at 258.

Defendants Doucet and Storr, in their individual capacities, only seek summary judgment as to Plaintiff's excessive force claim. A plaintiff must demonstrate the following elements in order to establish a claim of excessive force: (1) an injury; (2) that resulted directly and only from the use of force that was excessive to the need; and (3) that the force used was objectively reasonable. *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Defendants concede that Plaintiff has alleged the violation of a clearly established constitutional right, but argue that their actions were objectively reasonable. However, Plaintiff asserts that he never tackled Storr and never attempted to punch him, but asserts that Storr and Doucet began attacking him after the security guard pushed him into Storr. Since the parties have asserted two very different versions of the events at issue, a genuine issue of material fact exists as to whether Storr and Doucet acted in an objectively reasonable manner when using force against Plaintiff. Therefore, Defendants Storr and Doucet are not entitled to summary judgment with regard to Plaintiff's excessive force claim.

**PLAINTIFF'S SECTION 1983 CLAIMS AGAINST THE CITY OF BILOXI**

Plaintiff has alleged the following violations: cruel and unusual punishment under the Eighth and Fourteenth Amendments; deprivation of liberty without due process of law; violation of Plaintiff's right to be safe and protected from injuries while in Defendants' custody; violation of Plaintiff's right to be protected by the police officers while under their control; violation of Plaintiff's right to be free from excessive and unreasonable force; and violation of Plaintiff's

right to necessary medical treatment for his injuries. (Compl. at 18). Section 1983 prohibits "persons" acting under color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws . . . ." 42 U.S.C. §1983. The United States Supreme Court has held that municipalities qualify as "persons" under Section 1983. *Monell v. Dept. of Social Serv.*, 436 U.S. 658 (1978). There is no vicarious liability against a governmental entity for the actions of its employees unless the plaintiff demonstrates the existence of a policy or practice approved by the entity. *Monell*, 436 U.S. at 690-91. Lawsuits against police officers in their official capacity are essentially lawsuits against the municipality. *See id.* at 690.

In a claim against a municipality under Section 1983, a plaintiff must demonstrate that: (1) a municipal policy or custom existed; (2) governmental policymakers actually or constructively knew of the policy or custom's existence; (3) a constitutional violation occurred; and (4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 91 F.3d 521, 532 (5th Cir. 1996). An official policy includes:

> (1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom lawmakers have delegated policy-making authority; and
> (2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under §1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).

Plaintiff argues that the City's policy concerning citizen's arrest led to the alleged

constitutional violations that he suffered.  Specifically, Plaintiff states: "It is the policy and/or widespread practice, of the Biloxi Police Department through policymaker, Bruce Dunagan, that its officers may make an arrest at the request of a citizen without making any independent investigation and without making any determination as to probable cause." (Pl.'s Mem. at 18). In support of this assertion, Plaintiff relies upon the deposition testimony of Chief Dunagan. However, Dunagan did not testify that the City policy allowed officers to arrest persons for misdemeanors without conducting an independent investigation or making a determination as to probable cause.  (*See* Ex. I to Pl.'s Resp.).  Dunagan testified that there were several factors considered by officers when making a citizen's arrest, including the crime alleged, whether the suspect is aggressive, and whether the citizen making the arrest is intoxicated. (Ex. I to Pl.'s Resp. at 14-15).  Plaintiff also argues that Dunagan's testimony that he had found no wrongdoing on the part of Storr demonstrates that the City's policy condoned the actions of Storr and the other officers with regard to the handling of the citizen's arrest.  Nevertheless, Dunagan merely explained that the officer handling the arrest is in the best position to determine whether the suspect should be taken into custody in accordance with the citizen's arrest.  (*Id.* at 14-15, 17-18).

All of the evidence presented concerning the City's policy on citizen's arrest indicates that officers were permitted to use their best judgment in determining whether to take a suspect into custody following a citizen's arrest.  (*See* Ex. I to Pl.'s Resp. at 13-18).  There is no evidence that the City policy permitted officers to arrest suspects in circumstances in which there was no probable cause for the arrest. Therefore, Plaintiff has not demonstrated that the City's policy concerning citizen's arrest was the moving force behind the alleged constitutional violations.

Therefore the City of Biloxi is entitled to summary judgment as to Plaintiff's Section 1983 claims.  Additionally, all of the defendants are entitled to summary judgment with regard to Plaintiff's Section 1983 claims filed against them in their official capacities.  *See Monell*, 436 U.S. at 690(holding that lawsuits against police officers in their official capacity are essentially lawsuits against the municipality).

### PLAINTIFF'S CLAIMS AGAINST CHIEF DUNAGAN AND MAYOR HOLLOWAY IN THEIR INDIVIDUAL CAPACITIES

Plaintiff has sued Mayor Holloway and Chief Dunagan in their individual capacities, alleging that these defendants are responsible for the actions of Officers Storr and Doucet.  However, supervisory personnel cannot be held liable in a § 1983 case under a vicarious-liability theory.  *See, e.g., Becerra v. Asher,* 105 F.3d 1042, 1045 (5th Cir. 1997).  Therefore, Mayor Holloway and Chief Dunagan are entitled to summary judgment.

### PLAINTIFF'S EIGHTH AMENDMENT CLAIM

Plaintiff alleges that Defendants violated the Eighth Amendment when they arrested him, used force against him, and denied him medical care.  However, the Eighth Amendment prohibition of cruel and unusual punishment does not apply where a detainee's imprisonment does not result from a criminal conviction.  *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir. 1986)(citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).  Since Plaintiff's imprisonment did not result from a criminal conviction, Defendants are entitled to summary judgment as to his Eighth Amendment claim.

### PLAINTIFF'S PUNITIVE DAMAGES CLAIM AGAINST THE CITY OF BILOXI

Plaintiff seeks punitive damages against the City of Biloxi.  However, Municipalities are

immune from punitive damages in Section 1983 claims and in state law claims filed pursuant to the Mississippi Tort Claims Act. *Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984)(citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)); MISS. CODE ANN. § 11-46-15(2). Therefore the City of Biloxi is entitled to summary judgment as to Plaintiff's punitive damages claim.

**PLAINTIFF'S STATE LAW CLAIMS**

Defendants argue that they are entitled to summary judgment with regard to Plaintiff's state law claims. Defendants argue they are entitled to summary judgment under the Mississippi Tort Claims Act because Plaintiff was engaged in criminal activity, Defendants did not act with reckless disregard, and Defendants had a valid arrest warrant. *See* MISS. CODE ANN. §11-46-9(1)(c); *Keen v. Simpson County*, 904 So. 2d 1157, 1161 (¶22) (Miss. Ct. App. 2004). However, a genuine issue of material fact exists regarding whether Plaintiff was engaged in criminal activity at the time of the arrest, since Plaintiff asserts he committed no crime. Additionally, a genuine issue of material fact exists regarding whether Defendants acted with reckless disregard, because Plaintiff asserts that Defendants assaulted him without provocation. Finally, Defendants have presented no evidence that indicates that Defendants had a valid arrest warrant when they arrested Plaintiff. Defendants have therefore failed to show that they are entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [38] is **GRANTED IN PART** and **DENIED IN PART**. All defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claim. The City of Biloxi, Mayor A. J. Holloway, and Bruce Dunagan are entitled to summary judgment as to Plaintiff's

claims filed pursuant to 42 U.S.C. §1983 and Plaintiff's punitive damages claim.  Evan Storr and Scott Doucet are entitled to summary judgment with regard to the claims filed against them in their official capacities.  Defendants' Motion is denied in all other respects.

**SO ORDERED AND ADJUDGED** this the 2nd day of August, 2007.


                                                  s/ *Louis Guirola, Jr.*
                                                  LOUIS GUIROLA, JR.
                                                  UNITED STATES DISTRICT JUDGE